JOSEPH DI CLAUDIO, Plaintiff, *v.* JOSEPHINE DI CLAUDIO, Defendant.

Supreme Court, Special Term, Bronx County, March 10, 1954.

*John F. Loonam* for plaintiff.

*Vincent J. Mandes* and *Arnold S. Greene* for defendant.

CORCORAN, J. In this action the husband seeks an annulment of his marriage to the defendant on the ground that, at the time of their marriage, the defendant was already the lawful wife of another man — one Joseph Le Clair.

The defendant married Joseph Le Clair in November, 1935. He was then about sixty-four years of age. They established their home in Freeport, Long Island, but lived together for less than one year, for on May 23, 1936, Le Clair deserted the defendant. He left a note for her in which he gave no indication of ever returning home, and in which he referred to the possibility of his committing suicide. The defendant heard of Le Clair shortly after that date when an attorney advised her that Le Clair had been in communication with him and had executed a deed of the house in which the defendant and Le Clair had lived.

The defendant made many efforts after that time to learn if Le Clair was alive and where he was located. She communicated with the Freeport police department and gave them a photograph of her missing husband. She also advertised in a Freeport newspaper seeking information concerning his whereabouts. She has never heard anything more of Le Clair since 1936.

Early in 1944, the plaintiff asked the defendant to marry him. He knew about her earlier marriage to Le Clair, and the circumstances of his disappearance. The plaintiff suggested to defendant that she communicate with the bureau of missing persons of the police department of the City of New York and also with the morgue. She followed his advice, and she also consulted an attorney about bringing a proceeding under section 7-a of the Domestic Relations Law for a dissolution of her marriage to Le Clair.

One of the defendant's visits to the morgue was late in 1946, or early in 1947. At that time, she selected a photograph of the face of a deceased person as being that of her husband Le Clair. The officer in charge checked his records and found that this was a photograph of a Joseph Le Clair. The records also disclosed that this man had died in 1944, at the age of seventy-three years, which was approximately the age of the defendant's missing husband at that time.

The defendant informed her attorney of her discovery, and he advised her that it was no longer necessary to obtain any decree of dissolution of her marriage to Le Clair. She also told the plaintiff that she had found out that her former husband had died in 1944. The plaintiff and the defendant were married shortly thereafter.

At the trial, the plaintiff introduced evidence that the Joseph Le Clair whose body lay in the morgue in 1944, was not the same Joseph Le Clair whom the plaintiff married in 1935. Despite the identity of names, the similarity of appearance between the photograph of the deceased and of the defendant's missing husband, and the fact that they were approximately the same age, the plaintiff's evidence was overwhelming that they were not the same man.

While I am convinced by the plaintiff's evidence that the identification of the deceased Joseph Le Clair as the husband of the defendant was just a strange and almost unbelievable coincidence, the fact remains that the plaintiff has failed to prove that the Joseph Le Clair who was married to the defendant is still alive. He disappeared without a trace more than ten years before the marriage between the plaintiff and the defendant. The burden is upon the plaintiff to show that he is still alive.

Entirely aside from the presumption that a person is presumed dead after an unexplained absence for seven successive years (*Butler* v. *Mutual Life Ins. Co.*, 225 N. Y. 197), the plaintiff has the burden of proof of establishing that the defendant's first husband was alive at the time of her marriage to the plaintiff. He cannot rely on a presumption of continuing life as against the much stronger presumption of innocence and validity of the marriage which he now seeks to annul. (*Palmer* v. *Palmer*, 162 N. Y. 130; *Matter of Meehan*, 150 App. Div. 681; *Romps* v. *Romps*, 209 App. Div. 832.)

Judgment is directed in favor of the defendant.