ANONYMOUS, Petitioner, *v.* ANONYMOUS, Respondent.

Domestic Relations Court of New York, Family Court Division, Bronx County, June 28, 1940.

*William C. Chanler, Corporation Counsel [Rose Schneph* of counsel], for the petitioner.

*Donald Crichton,* for the respondent.

SICHER, J. In this proceeding for a support order respondent challenges the primary allegation that petitioner is his wife.

Concededly, the parties were the principals in a formal marriage ceremony, duly performed, on November 8, 1937, at Toledo, Ohio, and thereafter cohabited as man and wife until March 30, 1940. It is also admitted that to the official issuing the marriage license respondent had represented himself as being single. But he now asserts that such purported marriage was void, for the reason that in truth he lacked the legal capacity to marry petitioner. And upon the hearings before me it was fully proved that on December 17,

1929, at New York city, respondent had participated in a prior complete marriage ceremony with another woman, who is still living, that the marriage was duly consummated, and that, although respondent abandoned that spouse within two weeks and had not thereafter contributed to her support nor until quite recently communicated with or searched for her, such first marriage was never annulled or dissolved nor were there taken any steps whatever towards an annulment or divorce.

Upon the foregoing undisputed facts, the inference of law necessarily follows that petitioner is not, and never was, the wife of respondent.

" A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless * * *

" 1. Such former marriage has been annulled or has been dissolved for a cause other than the adultery of such person * * *." (Dom. Rel. Law, § 6.)

" Under the well-established rule in our State, any subsequent attempted marriage by a person at a time when his spouse is living, is void." (*Matter of Burdak*, 173 Misc. 839, 841, and cases cited.)

" The principle of the presumption in favor of the validity of a ceremonial marriage, urged by respondent, cannot be invoked against an adequate factual demonstration to the contrary." (*Matter of Shuff*, 151 Misc. 754.)

Nevertheless, the corporation counsel of the city of New York earnestly urges that this court is required to enter against respondent an order for petitioner's support by force of the compelling authority of the March 12, 1940, decision of the Court of Appeals in *Krause* v. *Krause* (282 N. Y. 355). It is argued that " although the marriage between E. R. R. and D. R. is void under section 6 of the Domestic Relations Law, the respondent, having seen fit to induce the petitioner to marry him, cannot now be heard to declare that he need not support her and that the taxpayers of the city of New York should assume that burden;" and that argument is predicated upon certain language culled from the majority and dissenting opinions in *Krause* v. *Krause* (*supra*).

That was an action for separation brought by a second wife, in which the husband sought to avoid liability for her support by pleading the invalidity of a Nevada decree of divorce he had obtained against his first wife. The nature and scope of the five-two decision of the Court of Appeals appear from the official report headnotes, reading:

" 1. Defendant, a married man, who, with his wife, was domiciled in this State, went to a foreign State and procured a divorce. His wife neither entered an appearance nor was personally served in

that action and at all times remained a resident of this State. Subsequently defendant married the plaintiff in this action and lived with her as his wife for six years when he abandoned her. In this action for a separation, a separate defense that defendant lacked capacity to marry plaintiff because the court which, upon his petition, purported to accord him a divorce from his first wife, never obtained jurisdiction over his said wife or of the subject-matter of the action, was properly stricken out. Defendant may not be heard to assert in this action that the judgment of divorce which he sought and obtained failed of its purpose and thereby did not give to the defendant that freedom to remarry which he appeared to possess by virtue of that judgment. (*Stevens* v. *Stevens*, 273 N. Y. 157; *Vose* v. *Vose*, 280 N. Y. 779; *Brown* v. *Brown*, 242 App. Div. 33; affd., 266 N. Y. 532, distinguished.)

" 2. In arriving at the ability of the defendant to support the plaintiff, the needs of his first wife, to whom he is still married, must be taken into account." (*Krause* v. *Krause*, 282 N. Y. 355.)

One essential, if not, indeed, indispensable, element of the *ratio decidendi* appears to be the principle that " In general, a person who invokes the jurisdiction of a court will not be heard to repudiate the judgment upon his seeking and in his favor." For, that sentence, quoted from the majority opinion (p. 357), is immediately followed by a discussion of earlier decisions in this State in which that principle was applied, and then *Vose* v. *Vose* (280 N. Y. 779) is expressly distinguished as being a case in which " the plaintiff in a prior action was allowed to repudiate the judgment of divorce which he had obtained " because " neither of the parties ever left this State and the judgment which was repudiated was that of a divorce by a Mexican court which had not even the slightest semblance of jurisdiction to act in the premises " (p. 359). And that opinion goes on to state: " *We come, then, to a consideration of the principle applicable in the case at bar. We cannot lose sight of the fact that the present defendant was himself the party who had obtained the decree of divorce which he now asserts to be invalid and repudiates* in order that he may now disown any legal obligation to support the plaintiff, whom he purported to marry " (p. 359; italics supplied).

Examination of the record on appeal shows also that the sole ground stated in the Special Term order, successively affirmed by the Appellate Division of the First Department and the Court of Appeals, was: " It would be a hideous travesty on justice if a person who has invoked the jurisdiction of the courts in another State and succeeded in obtaining relief could be heard in our courts to impeach the validity of the decree obtained by him. (*Starbuck* v. *Starbuck*,

173 N. Y. 503; *Nathan* v. *Nathan,* 150 Misc. 895.) The defendant having had recourse to the courts of Nevada will not now be permitted to assail the decree he obtained." (N. Y. L. J. Aug. 19, 1938, p. 458.)

The respondent in the proceeding before me never sought a divorce nor in any way invoked the aid of any court in respect of his first marriage. There is here wholly absent the factor of attempted repudiation of the decree of a court whose jurisdiction had been previously invoked by the would-be repudiator. The only basis for a quasi-estoppel is respondent's sworn statement, in the application for the marriage license at Toledo, Ohio, that he was single, his alleged concealment from petitioner of the fact of his prior marriage, and the two and one-half years' cohabitation as husband and wife. In the light of that previous course of conduct toward petitioner, respondent's present position is reprehensible. But even more flagrantly active inconsistency has been adjudged not to preclude a plea of the invalidity of a void second marriage. (*Vose* v. *Vose, supra; Lefferts* v. *Lefferts,* 238 App. Div. 37, 38; affd., 263 N. Y. 131; *Risk* v. *Risk,* 169 Misc. 287.)

Unless *Krause* v. *Krause (supra)* must be interpreted as having enunciated a new and broader principle, in cases primarily involving marital status the doctrine of quasi-estoppel appears to have been applied only to the extent of precluding a party from impeaching a judgment he or she had procured to be entered. And, despite certain expressions in the majority and dissenting opinions, I am not persuaded that in *Krause* v. *Krause (supra)* the Court of Appeals intended to go any further or, at least, to the length urged by petitioner's counsel herein. If it meant to lay down the sweeping rule that in *no* case where the man had purported to marry a woman and lived with her as his wife will he be heard to assert that he is actually still the husband of another, why did the prevailing opinion distinguish, and reaffirm, the holding in *Vose* v. *Vose (supra)* to the effect that if the second marriage be void because preceded by a Mexican " mail order " divorce from the former spouse there is no estoppel against repudiation of the obligations of such abortive second marriage?

Another deterrent against acceptance of petitioner's counsel's ingenious and attractive thesis is the duty of circumspection against overstepping the bounds of the legislative grant of enumerated powers to a statutory court of limited jurisdiction. The particular power relative to the proceeding at bar is defined as: " Jurisdiction within the city to hear and determine all proceedings to compel the support of a *wife* * * *" (Dom. Rel. Ct. Act of City of N. Y. § 91, subd. 1; italics supplied) and, " In the exercise of its

jurisdiction * * * To order the support of a *wife* * * * as justice requires * * *." (Id. § 92, subd. 1; italics supplied.) So, it is fairly arguable that the existence of the conventional relationship of husband and wife is a jurisdictional prerequisite to a Family Court order for support of a wife. (See *Marianacci* v. *Marrianacci*, 164 Misc. 467; cf. *Merritt* v. *Merritt*, 259 App. Div. 242, 245, 246.)

Suppose even, contrary to the fact, that the respondent in the instant proceeding, like the defendant in *Krause* v. *Krause* (*supra*), had gone to Nevada and there procured a decree of divorce from his first wife by publication before the marriage ceremony with petitioner, it would still be at least doubtful whether this court, lacking general equity power, could apply the doctrine of quasi-estoppel against respondent on the issue of jurisdiction. (But see *Campbell* v. *Campbell*, 164 Misc. 647; *Carbone* v. *Carbone*, 166 id. 924.) For *Krause* v. *Krause* (*supra*) proceeds on the theory that while the second marriage of the defendant there, like that of the respondent here, is void, it is within the power of the Supreme Court of the State of New York, in a matrimonial action, to preclude repudiation of the Nevada judgment by the party who procured it. Whether or not that quasi-estoppel doctrine could be applied in this court of limited jurisdiction, as a matter of public policy, upon such a state of facts on all fours with *Krause* v. *Krause* (*supra*), it is unnecessary to determine in the proceeding at bar. Suffice it to hold that, in the absence of an authorizing decision of the Appellate Division or the Court of Appeals, this statutory court of first instance is not free to make a support order against the respondent herein on the broad ground that he is estopped from questioning the jurisdiction to make such order by his unfair conduct in inducing petitioner to enter into a supposedly valid, but actually void, marital relationship.

" A determination of jurisdiction by reason of estoppel is, however, a most unsatisfactory and frequently hazardous basis of adjudication, which should be attained only as a final resort for the purpose of promoting the ends of justice." (*Matter of Auditore*, 159 Misc. 402, 406.)

For the foregoing reasons, I am constrained to dismiss the petition and refer petitioner to home relief.

Fortunately, such dismissal will not leave the petitioner without remedy. Upon the facts shown herein, petitioner could institute an action for annulment, in the Supreme Court of the State of New York, under section 1134 of the Civil Practice Act and seek therein a direction for her support under the provisions of section 1140-a of the Civil Practice Act. (Added by Laws of 1940, chap. 226,

effective Sept. 1, 1940.) Meanwhile, she may have again secured a theatrical engagement, or, if not, could apply for temporary home relief.

Moreover, dismissal of the petition paves the way for an appeal by the corporation counsel of the city of New York under section 59 of Domestic Relations Court Act of the City of New York, as amended by chapter 431 of the Laws of 1940; and it is suggested that the corporation counsel consider the advisability of instituting such appeal with a view to procuring an appellate court determination as to the power of the Family Court Division of Domestic Relations Court of the City of New York in that class of cases, of which this is typical, where the conventional relationship of husband and wife does not exist as a matter of law but the circumstances cry out against respondent's escape from the support obligations he had purportedly assumed. (See 49 Yale L. J. 1130.)

Four copies of this memorandum are being filed with the original; and the clerk of this court is hereby directed to mail or deliver one copy to Assistant Corporation Counsel Schneph in behalf of petitioner, one copy direct to petitioner with a letter notifying her of the substance of this decision, and two copies to the attorney for respondent, one of them for delivery to respondent by such attorney.